Case number 10-2012, People v. Ronnie Jenkins. Would the lawyers be kind enough to identify yourselves for the record? Brian Carroll, representing Ronnie Jenkins. Good morning, Your Honors. Assistant State's Attorney Iris Ferrosi here for the people of the state of Illinois. All right. Welcome to you both. Mr. Carroll, if you would like to proceed. Good morning, Your Honors. The trial court in this case committed reversible error by prohibiting Mr. Jenkins from presenting first-hand accounts of Ms. Granberry's violent character in support of his theory of self-defense. Can we just start with the last two words you just said? Self-defense. Sure. How was his explanation of how this killing occurred self-defense? How was that a theory that he could use? Well, his version of events was that after they had a dispute over her consumption of more drugs than they had agreed to, he tried to get her out of the house. She came after him with a knife, and there was a struggle with him trying to get the knife away from her. He testified that he was in fear of his life while he was fending her off. All right. By your own brief and the citations to the record, a quote starting at the bottom of page 7. When Jenkins led her up, Granberry again attacked him with the knife. He grabbed her hand, holding the knife, and held it over her head. Granberry tried to grab the knife with her other hand, cutting herself. Then they both fell on the couch, and the knife went into Granberry's chest. Granberry made a gurgling sound and closed her eyes and died. Later on, you talk about the fact that basically he said it just happened. It was an accident. So whatever initiated the initial struggle, he says that the act that caused the death was not an intentional act taken to try to defend himself, but rather an act that happened when they were struggling and happened accidentally during the struggle. That he didn't make an affirmative attempt to try to strike out at her. Well, if he had initiated the struggle and it still had happened, like he didn't mean to kill her, but they were still struggling, falls down, knife accidentally goes into her, then he could be, by being the initiator of the struggle, he could be charged with felony battery. Sure, there's no question of that, but the reverse is not necessarily so. That if she attacks him, and the act that causes the death is not a volitional act, but by his own testimony, self-defense, or excuse me, an accident, and he doesn't even know how it happened, why do we care? Lynch is there to prove that someone is the aggressor, but it only is applicable when there is a self-defense. Well, your honor, if he would be culpable for not just knowing murder, but if anything he did was seen to have strong probability of causing the death through his actions, so whether or not he was defending himself from her attack, or he was the initiator of the attack, was still something that the jury had to consider for determining whether or not he could be seen as culpable for her death. Counsel, in this case, it was a jury trial. Did the court instruct the jury on self-defense? Yes, your honor. So the trial court at least thought there was some evidence to go to the jury on the issue. That's correct, your honor. Pardon me for interrupting, but I just wanted to clarify. I thought there was an instruction on self-defense. Yes, the court did agree that there was sufficient evidence to present a self-defense defense, and thus Jenkins was entitled to present evidence to promote that defense. Well, how do we review that? Do we review it for an abuse of discretion, do we not? Or are we reviewing it de novo? Since it's an evidentiary issue, it's an abuse of discretion, your honor. All right. Now, the court's ruling was based on that the events were too remote? That's correct, your honor. However, incidents over seven years old are routinely admitted as evidence of the person's character. Well, the Lynch case didn't really put any sort of time frame on the admission of that kind of evidence anyway, did it? No, your honor. Again, the ten-year range for Montgomery character evidence doesn't even include the time that the person's in prison, so the actual behavior that speaks to the person's character could be well over a decade old. This is a situation where you're not claiming that the defendant was aware of these violent acts, are you? No, your honor. Well, this would be the situation where the victim's propensity for violence is being used to support the defendant's version of the facts. Yeah, that's correct. But there's a sentence in Lynch that I was looking at where it says this evidence is admitted where there are conflicting accounts about what happened. Here, there is no conflict. Is there about what happened? Well, the state presented a testimony of a medical examiner who testified that some of Granberry's wounds were consistent with defensive wounds. But how would that be inconsistent with the version of the defendant in any event? Because if there's a struggle over something, just the use of the phrase defensive wounds only means that sometime during the course of the struggle, someone was trying to grab the knife. Well, your honor, the state certainly thought that and certainly believes that that evidence is contrary to Jenkins' version of events. And if there's no conflict in the evidence of Jenkins' version of events, then this court should just summarily reverse his conviction. And is there a place in all of this for a reviewing court to be able to say that the entire story that is posited by the defendant borders on the absurd? Well, your honor, the jury didn't think so. They acquitted him of the sexual assault trial. Well, why does that necessarily dovetail into an analysis of whether they think that it was a self-defense or not? Because really, the defendant's own version speaks to the fact that the dispute was not about the sexual act, but about the unwarranted consumption of the illegal drugs while he was out of the room. That's correct, your honor. However, he was charged with sexual assault. And felony murder. And felony murder. So the jury had to make a determination. The state was saying, no, his entire story is baloney. Well, they could certainly argue that. Yes. What about harmless error? Is the failure to allow the defendant the right to present these two other incidents involving the deceased person, is it subject to the harmless error rule? Yes, your honor. So the state argues the evidence is overwhelming. Overwhelming in the sense that there were 26 external injuries to the victim. Five internal injuries including stab wounds, incise wounds, puncture wounds, abrasions, and blunt force. And then there were these 11 other defensive wounds that they were described as such. And then there's the DNA evidence. And we have this testimony from... Well, the defendant first doesn't indicate anything. He initially denies any knowledge of this. When initially questioned by the police. And then the story does change. So in that sense, in reference to Justice Epstein's question, could the jury or could we say the evidence was overwhelming in terms of this being a murder versus the exercise of self-defense? And therefore the failure to give or allow the introduction of this evidence? I don't believe so in this case, your honor. All the injuries that the medical examiner described, it could be explained through this extended... What about the one stab wound that was so deep it broke a vertebrae? The stab wound to the throat was so forceful that it broke the vertebrae. How is that a defensive wound? Well, your honor, we don't know when that happened. The state hasn't offered any evidence at what point during the struggle that happened. Maybe it happened as we were continuing and falling with the knife onto the couch towards the end. We don't know. But however, it's... Again, Jenkins gave the only first-hand account of what happened. That's often the case in a homicide case. There's one fewer witness than would otherwise be the case. That's true, your honor. However, that still makes the lynch material more critical because the jury's evaluation of Jenkins' story is what this case hinges on. And the lynch material would go directly to their determination of that fact. The state didn't give any direct evidence of what happened. The medical examiner... What about the lack of real detail to this purported lynch testimony? This isn't of the quality of some of the other lynch cases that we... lynch progeny cases that we've read, certainly. Well, your honor, in Peoples v. Hansen... And doesn't that figure into the harmless error abuse of discretion evaluation? That is a factor, but it's not a factor against Jenkins in this case. In Peoples v. Hansen, the counsel proffered that two witnesses would testify that they saw the victim pull a knife and threaten a person in the tavern. That's no more detailed than what we have here. Yet the appellate court there held that it was error for the court to withhold that. And counsel advised the court of the nature of the incident. Two incidents where Granberry attacked McMillan. Who would testify? McMillan would testify herself. She proffered the basis of her knowledge that it's firsthand and the purpose. So the counsel gave an adequate proffer of what the lynch evidence would be. And lynch itself says that counsel doesn't have to proffer all the details of what the testimony would be. So the proffer in this case was adequate. Going on to some of the state's other arguments, the fact that there was no arrest or conviction in regard to the incident in which Granberry stabbed McMillan, that's a red herring. Case law is clear that firsthand testimony doesn't have to be collaborated by arrest or police reports. And their claim that the police report with regard to the second incident is inconsistent with the lynch evidence is McMillan's testimony, not the police report. And again, the case law is clear that arrest reports are not proof of what actually happened. So unless you have any more questions, I'll reserve my remaining time for rebuttal. Thank you, Mr. Carroll. Ms. Ferosi? Good morning, Your Honor. Thank you for the support. My name is Assistant State's Attorney Iris Ferosi. Can we start with the issue of the fact that the seven-year limit was really not anything that we see in any case law precedent? Well, it wasn't just the seven years, Your Honor. It was also the fact that the evidence The idea of it being too remote, I believe, was the judge's language. Yes, the judge did say it was too remote. Doesn't that suggest a temporal evaluation? Yes, that he believed it was too remote, that it was seven years prior to the murder, almost to the day, but also because the evidence was completely unreliable. There was nothing Well, let's just take it bit by bit. I know you'd rather talk about the second aspect than the first, but I'd like to get an answer as to your view on putting a seven-year limitation, especially in view of the fact that, as Mr. Carroll was alluding to, when it comes to whether somebody has an impeachable offense under Montgomery, ten years is acceptable. Well, and let me be clear. I'm not trying to skirt this issue at all. What I would like this Court to focus on is the case law doesn't just look at one element. It doesn't just say, it's too remote, it's out, like Montgomery does. It looks at the totality of the evidence that's trying to be presented to the Court under Lynch. So while, in this case, seven years was too remote, the Court did also consider the fact that the evidence was unreliable. And we're not asking today that this Court say that every, excuse me, that every single case that the defense tries to bring up under Lynch evidence should have a timeline. Why was it so unreliable? Well, so the defense brings up, after a defendant had already testified, okay, the state was never put on notice. The defense never made a Lynch motion. Wasn't this mentioned in some form of the discovery? The defense, in their answer to discovery, attached a police report and Latasha McMillan's name, no date of birth, was on there. So you're saying that the state was surprised? Well, not with respect to that incident, but when the defendant brings up this other incident, where he can't even, and the proffer didn't even say when it happened. It happened sometime before the incident. Was the self-defense noted at all in the answer to discovery? Yes, it was. But there's the one incident that the state knew of, which there was an actual documented police report, okay? And in that incident... So you weren't surprised by that one? No, but in that incident, it was mutual combatants. It was Latasha McMillan and the defense's own proffer coming to find Cheryl Granberry with a knife. Is that something that the jury would determine after they heard that information? Well, I guess it could be, Your Honor, but they have to first meet the threshold of lynch, which is, it has to show in some way the victim's propensity for violence. And in that... Are there that many cases out there affirming the exclusion of self-defense evidence because it didn't fit exactly into what you're claiming are the parameters of lynch? Well, I think there's a good number of cases where, and this Court has reviewed many of them. Well, one of the cases that you cite for just, as a general rule, other offenses that are close in time... Yes. ...will have more probative value than you cited a relatively older Illinois Supreme Court case, Ilgin. Yes. Was that a lynch? No, it was not. That was prior to lynch, wasn't it? That was prior, you're correct. And lynch obviously stood for something other than Ilgin did. In the lynch case itself... There were convictions. Weren't there battery convictions? Yes, and the defendant immediately... You said that needs to be presented to the jury because it was just a matter of a conviction. But they didn't just... There was an offer of proof problem there, wasn't there? Yes, and the lynch... But in this case, didn't the lawyer pretty much establish... I mean, you're not suggesting or absolutely stating that there was not an appropriate offer of proof. Oh, all right. Not that it wasn't made, but it wasn't good enough. Well, yes. I mean, there was no reliability to that offer of proof. I mean, the defendant says it happened sometime before the police report. There's no arrest. There's no corroboration. There's no police reports. There's no medical testimony to say that this woman's hand was caught. There's no type of reliability. Well, if you have a witness who gets up there and submits to cross-examination, isn't that how veracity is usually tested? And the fact that either it wasn't reported or wasn't taken seriously by the police or whatever, does that really bar the introduction of the testimony? Well, I think like any other evidence, it has to be relevant before it comes in. We're not talking about relevance. We're talking about the adequacy of really the believability of it is what you were referring to. Yes, there should be a threshold. And it would have to include such things as an arrest and a conviction or a medical report? Not necessarily, Your Honor. That's sort of what I think, too, reading the case law. Not necessarily. It's like this Court has ruled. It's a totality of the circumstances. You have to look at all the evidence. As Judge Sachs did, he looked at not just... But all he really said was it's too remote. Right. And I believe he also said that he didn't feel that it would assist the jury in deciding who the initial aggressor was. Not exactly in those words, but to that effect, which leads me to believe that he didn't believe it was relevant in showing Ms. Granberry's violent tendencies. In one case, there are mutual combats. There really isn't any case involving Lynch where the Court said that the time frame is something the Court should look at. Are you getting totality of the evidence out of Lynch somewhere? I'm getting it out of... The other cases in terms of Lynch? The other cases, yes. And, for example, People v. Figueroa, which is a case I cited to in this case. Clearly the facts are different. I'm not judging. But this Court held when the defendant tried to bring in the witnesses... Another division of this Court held. Yes, but... Wasn't this where the Court said that because the person that was shot in that case wasn't really the victim that... This Court did initially say that and that the self-defense was weak. It was one of the reasons why it said the barring of Lynch material was affirmed because in that case it said Lynch didn't really apply to innocent bystanders. Well, the Court said that initially, and then did do the analysis under Lynch. And also, the state initially said that the self-defense there was incredibly weak, which is what Justice Epstein said. The initial thing you said to my opponent... It wasn't exactly my word. Well, in this case... It was more a series of questions. I misquoted you, but... I expect you would see that we've asked tough questions to both sides. Yes. It wasn't that... I don't want to use a word like preposterous, but the jury in this case was instructed on self-defense. They were. Because the judge believed that the issue should have gone to the jury. That's correct. However, it's the tiniest bit of evidence presented by the defendant. When the defendant got up there and said, I feared for my life, even though he denied it to the police when the police initially questioned him. Even after his preposterous story, he decided to strip the victim naked, drag her out of his house, and throw her in the alley like a sack of garbage. The DNA linked him to the case. He still denied it until he was confronted with that fact, and then he said, okay, yeah, I do know her. This isn't like Lynch. You do agree that it's subject to a harmless error rule. You say that in your brief. That if it was error for the court to deny the defense, to put on their defense through this other testimony, that it would be subject  So, as we know, as this court knows, the evidence in this case was overwhelming. Based on the medical examiner's testimony, her 37 total external injuries, including the injury to her neck that cut her vertebral artery and broke her vertebrae, which the defendant could not account for, and the stab wound to her chest that was protecting herself against him, and he even admits when he testifies that he lost control of the knife, or he got control of the knife, excuse me, and that he put it down, went to check on his dog, left the knife with Ms. Granberry. There was also some evidence to the effect, wasn't this the situation where they first looked in the garbage cans to clean up some of the blood from around the area? Yes. But there was a bloody print left on the door. Correct. The detectives initially checked all the garbage cans in the area, found nothing, came back the next day, found the garbage bag full of bloody clothes, which the defendant admitted were the victims and the police found Ms. Granberry's body, or the witness did, and called the police's attention to it. The police spoke with the defendant, he denied it, gave an alibi, said he was at work, and then the next day throws everything in the garbage. Do you agree that generally though that the trial court's reasoning if it was simply oh this is just too remote, seven years old, I'm not letting you in, would that be the kind of reasoning we'd be looking for in terms of denying the introduction of evidence when there really aren't cases to talk about this remoteness for purposes of a defense? Yes, I think it is within the trial court's discretion to deny this lynch evidence based on remoteness. And this court absolutely  So if you're seven years old you think that would be discretionary? Yes, absolutely. Without any other considerations? Yes. Remoteness is a reason to deny it as is unreliability. I think he had both of them here. If a judge in a Montgomery case said seven years is remote and that's the only reason I'm doing it, what would your position be? My position is that What would your office's position be? Well, I don't know what my office's position is. I think I do. Well. Well earlier you said it should be the totality of the circumstances, but now you're saying you can bottom it solely on remoteness. So what is the test? Well, earlier actually I was saying that in my reading of the case law in Lynch, it looks to me that this court looks at the totality of the circumstances. I believe, though, that this trial court absolutely had the discretion to bar this evidence based on remoteness because there was no link to Cheryl Granberry's violent character and seven years prior on an incident that has never been documented anywhere and the state first heard about after the defendant testified and the fact that Cheryl Granberry was so brutally murdered seven years prior. There was just no link. And the judge did give, you know, the jury instruction as you state, but also if the judge would have let this evidence in, that would have opened the door for the state to bring in the defendants. He had a pending aggravated criminal sexual assault case that the state used in aggravation of sentencing and that would have opened the door for the state to bring that in to show the defendants' violent tendencies. What difference does that make? How does that advance your argument? Well, if the judge had done this, we'd be able to put in more evidence. I mean, how is that advancing your argument at all? Other than to tell us about his pending aggravated criminal sexual assault. It's only advancing it. I mean, it's me guessing what this trial court was thinking. He knew about this case. I mean, it was a pending case obviously. And, also... So, we're divining his intent and trying to graph that into an evaluation of the totality of the circumstances decision? No. I'm really having as hard a time as my colleague trying to understand why that's relevant at all. Well, it's just to place all of the questions that I have          not going to answer all of them. I'm not going to answer all of them. I'm not going to answer all of them.        No. I'm not going to answer all of them. Thank you. Okay. Any final words Mr. Carroll? In regards to the state being surprised by Macmillan's lack of proper testimony. They knew of Macmillan as a potential witness a month before trial. Secondly, in terms of the second incident involving Macmillan's cousin, the state's claim that it's inconsistent with the police report, that doesn't make their testimony admissible. If the state wants to challenge Macmillan's version of those events, it's free to do so on cross at a Jenkins new trial. Unless you have any further questions, just ask that this court reverse Jenkins conviction and remand for new evidence. Thank